IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BEN DAVIS,<br><br>    Plaintiff,<br><br>  v.<br><br>ERIN DIAZ,<br><br>    Defendant. | Case No. 3:18-cv-00264-SLG |

**ORDER RE MOTION FOR SUMMARY JUDGMENT**

  Before the Court is Defendant Erin Diaz-Oatman's Motion for Summary Judgment at Docket 45 and Plaintiff Ben Davis's Motion to Dismiss Summary Judgment at Docket 48.[1]  The Court provided Plaintiff with a Notice Regarding Motion for Summary Judgment at Docket 49, setting forth in detail the requirements for opposing a motion for summary judgment and providing Plaintiff with an opportunity to file an opposition.  Plaintiff filed a brief declaration as his opposition at Docket 50.[2]  Defendant replied at Docket 51.  Defendant requested oral argument, however, it was not necessary for the Court's decision.

---

[1] Due to the coronavirus pandemic, by Miscellaneous General Order 20-11, the District of Alaska imposed a stay on all civil matters for 30 days, effective March 30, 2020.  As the presiding judge in this matter, the undersigned judge vacates the stay in this case to enter this order, allow entry of judgment, and the filing of any post-judgment motions.  *See* MGO-20-11 at 6–7. However, the parties may move or stipulate to extend any filing deadlines.

[2] In his declaration, Mr. Davis states:

  I am relying on Federal case *Sealock v. Colorado* 218 F.3d 1205 (2000) to prove my

# BACKGROUND

## I. Mr. Davis's Allegations

At issue in this motion is Mr. Davis's Eighth Amendment claim against Nurse Erin Diaz-Oatman. On November 5, 2018, Mr. Davis commenced this action pursuant to 42 U.S.C. § 1983.[3] Mr. Davis filed the operative Second Amended Complaint ("SAC") on July 19, 2019, and therein, alleges under penalty of perjury that on or about September 18, 2018:

> I woke up with sever[e] chest pains[,] my bed was soaked with sweat and I was vomiting and I was having a hard time breathing. I was taken to medical where I was seen by Nurse Erin Diaz who took my vital signs and she was well aware of my heart trouble[.] My temp was 100.4[,] my BP 219/195[,] my pulse 98[,] resp 20[,] my chest and throat were throbbing pressure and pain. And as a result in Nurse Diaz not sending me to the ER I am now paralyzed from the waist down and I can not stand or walk I am now confined to a wheelchair for the rest of my life. If Nurse Diaz would have done an EKG and called the PA I may still be walking but [for] her deliberate[] indifferen[ce] to inmate medical needs I would still be walking.[4]

---

case cause it is the exact same case as mine[.] The nurses didn't follow the nurses['] protocol they did not do an EKG as is required and did not call the provider[.] If given the opportunity to be heard in court before a jury I can prove my case and I have witnesses to call to support my case. Please set this case for trial. If I'm not given a chance to be heard I'll never be able to prove my case.

Docket 50 at 1–2.

[3] Docket 1 (Complaint). On February 22, 2019, the Court screened Mr. Davis's claims and found that, "[c]onstrued liberally, Mr. Davis's first claim alleging Nurse Diaz treated him with deliberate indifference presents enough factual detail to move forward." Docket 9 at 4. The Court dismissed a second claim with leave to amend. Docket 9 at 8. On March 4, 2019, Mr. Davis filed a First Amended Complaint, maintaining his allegations against Nurse Diaz-Oatman. Docket 12 at 3.

[4] Docket 24 at 3. In its second screening order, the Court found that in the SAC, Mr. Davis had plausibly alleged a claim that Nurse Diaz-Oatman "was deliberately indifferent to his

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 2 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 2 of 20

Mr. Davis seeks damages in the amount of $ 20,000,000 and punitive damages in the amount of $ 20,000,000.[5]

Nurse Diaz-Oatman now moves for summary judgment on this claim.[6]

## II. Mr. Davis's Medical Records

Mr. Davis's medical records reflect a history of cardiac problems and diabetes, among other issues.[7] The records filed by Defendant in support of her motion include 16 EKG traces, 14 of which are dated between August 1, 2018 and October 31, 2018, and two which are undated.[8] Mr. Davis's medical records also include summaries of the following medical visits: August 6, 2018 with Registered Nurse ("RN") Ly (EKG reviewed);[9] August 21, 2018 with RN Parry for chest pain (EKG taken);[10] August

---

medical care, in violation of the Eighth Amendment," and allowed the SAC to replace his prior allegations in the earlier complaints. Docket 36 at 4. In the SAC, Mr. Davis also added claims against Paul Ly for violating his Eight Amendment rights. Docket 24 at 4. The Court dismissed Mr. Davis's claims against Nurse Ly for failure to state a claim. Docket 36 at 4–5.

[5] Docket 24 at 8.

[6] Docket 45.

[7] *See, e.g.*, Docket 46-1 at 16, 19–20.

[8] Docket 46-1 at 2–5, 8–9, 21, 23, 28, 34–35, 47, 55–57, 60–61.

[9] Docket 46-1 at 58.

[10] Docket 46-1 at 48–54. Mr. Davis's vitals were recorded: his blood pressure ("BP") was taken three times (208/84, 198/89, 166/82), his heart rate was taken twice (66 and 65), and his temperature was recorded as 97.9 degrees Fahrenheit. Docket 46-1 at 48.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 3 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 3 of 20

22, 2018 with RN Parry for chest and kidney pain (EKG taken and provider follow-up ordered);[11] August 23, 2018 with RN Gaines for chest pain;[12] August 24, 2018 with RN Howard for chest pain (EKG taken);[13] August 25, 2018 at 12:00 PM with HP Dietrich (EKG reviewed);[14] August 25, 2018 at 8:11 PM with RN Diaz-Oatman for chest pain (EKG taken and provider follow-up ordered);[15] August 28, 2018 with Adult Nurse Practitioner ("ANP") Ervin for chest pain (EKG reviewed and laboratory tests ordered);[16] September 18, 2018 with Physician's Assistant ("PA") Garoutte (referral to urology ordered);[17] and October 31, 2018 with RN Lowe and PA Garoutte for chest pain.[18]

---

[11] Docket 46-1 at 42–46. Mr. Davis's vitals were recorded: BP 175/90 (laying down) and 183/86 (sitting up), heart rate of 80 (laying down) and 72 (sitting up), and temperature of 97.8 degrees Fahrenheit. Docket 46-1 at 42.

[12] Docket 46-1 at 29–33. Mr. Davis's vitals were recorded: BP of 180/79, heart rate of 68, and temperature of 98.1 degrees Fahrenheit. Docket 46-1 at 42.

[13] Docket 46-1 at 25–27. Mr. Davis's vitals were recorded: BP of 157/67, heart rate of 63, and temperature of 97.8 degrees Fahrenheit.

[14] Docket 46-1 at 24.

[15] Docket 46-1 at 15–22. Mr. Davis's vitals were recorded: BP of 191/87, heart rate of 63, and temperature of 98 degrees Fahrenheit.

[16] Docket 46-1 at 10–14. Mr. Davis's vitals were recorded: BP of 149/77, heart rate of 95, and temperature of 98.5 degrees Fahrenheit.

[17] Docket 46-1 at 6–7; Docket 46-1 at 62.

[18] Docket 46-1 at 1.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 4 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 4 of 20

# LEGAL STANDARD

## I. Jurisdiction

This Court has jurisdiction over Mr. Davis's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331, which provides for federal question jurisdiction.

## II. Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.[19] When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[20]

The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine issue of fact for trial."[21] However, "[w]hen the nonmoving party has the burden of proof at trial, the moving party need only point

---

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[20] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (alteration in original) (quoting *Anderson*, 477 U.S. at 255).

[21] *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 5 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 5 of 20

out 'that there is an absence of evidence to support the nonmoving party's case.'"[22] Once the moving party has met its initial burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must provide evidence that "set[s] forth specific facts showing that there is a genuine issue for trial."[23] Thus, although a district court may find that a "complaint stated a claim under § 1983 at the preliminary stages of the litigation," a plaintiff cannot rest on those pleadings at summary judgment and must "affirmatively demonstrate that there is a genuine issue of material fact for trial."[24]

## II. Inadequate Medical Care of a Prisoner in Violation of the Eighth Amendment

"The '[u]nnecessary and wanton infliction of pain' upon incarcerated individuals under color of law constitutes a violation of the Eighth Amendment."[25] With respect to medical care, a violation of the Eighth Amendment occurs when a prison official is deliberately indifferent to a prisoner's serious medical needs.[26] "A medical need is

---

[22] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[23] *Anderson*, 477 U.S. at 248.

[24] *Whitman v. Nesic*, 368 F.3d 931, 933–34 (7th Cir. 2004) (dismissing plaintiff's argument that "since a district court found his complaint stated a claim under § 1983 at the preliminary stages of the litigation, his complaint must also survive summary judgment").

[25] *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs, Inc. v. Miller*, 104 F.3d 1133 1136 (9th Cir. 1997) (alteration in original) (quoting *Hudson v. McMillian*, 53 U.S. 1, 4 (1992).

[26] *Id. See also Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.").

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 6 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 6 of 20

serious if the failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain"; a "prison official is deliberately indifferent to that need if he 'knows of and disregards an excessive risk to inmate health.'"[27] Thus, a showing of deliberate indifference requires satisfying both an objective and a subjective component: the prison official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and actually draw that inference.[28] Accordingly, even if a prison official should have been aware of the risk, but was not, he or she has not violated the Eighth Amendment, no matter how severe the risk.[29] This subjective approach focuses on "what a defendant's mental attitude actually was."[30]

"[M]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."[31] Moreover, a

---

[27] *Peralta v. Dillard*, 744 F.3d 1076, 1081–82 (9th Cir. 2004) (en banc) (first quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); then quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Colwell v. Bannister,* 763 F.3d 1060, 1066–67 (9th Cir. 2014).

[28] *Farmer*, 511 U.S. at 837.

[29] *Gibson v. Cty. of Washoe, Nev*., 290 F.3d 1175, 1188 (9th Cir. 2002), overruled on other grounds by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).

[30] *Farmer*, 511 U.S. at 839. Per the Ninth Circuit's Model Civil Jury Instructions, to prevail on a claim under the Eighth Amendment based on inadequate medical care, a prisoner must show: (1) the plaintiff faced a substantial risk of serious harm or had a serious medical need; (2) the defendant was deliberately indifferent to that risk or medical need; *i.e.*, "the defendant knew of it and disregarded it by failing to take reasonable measures to address it"; and (3) the act or failure to act by the defendant caused harm to the plaintiff. *See* Ninth Circuit Model Civil Jury Instructions 9.27.

[31] *McGuckin*, 974 F.2d at 1059 (quoting *Hutchinson v. United States*, 838 F.2d 390, 394

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 7 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 7 of 20

showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another [i]s insufficient, as a matter of law, to establish deliberate indifference. In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law.[32]

## DISCUSSION

Defendant contends that she is entitled to summary judgment because (1) she did not treat Plaintiff on September 18, 2018 and therefore could not have been deliberately indifferent in doing so, and because (2) when she did treat Plaintiff on August 25, 2018, she provided him with appropriate care.[33]

Defendant maintains that she did not treat Mr. Davis on September 18, 2018, as alleged in the SAC.[34] She contends that, having searched through Plaintiff's medical records surrounding that date, she only treated Plaintiff on August 25, 2018.[35] With respect to that visit, Defendant emphasizes that her notes contradict aspects of Plaintiff's account of events. Specifically, she maintains that, in contrast to Plaintiff's allegations that his vitals were a temperature of 100.4 degrees Fahrenheit, a BP of 219/195, and a heart rate of 78, Plaintiff's records show that he

---

(9th Cir. 1988)).

[32] *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996) (citing *Estelle*, 429 U.S. at 107–08).

[33] Docket 46 at 9–10.

[34] Docket 46 at 9–10.

[35] Docket 46 at 10.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 8 of 20
Case 3:18-cv-00264-SLG  Document 52  Filed 04/15/20  Page 8 of 20

actually had a temperature of 98 degrees Fahrenheit, a BP of 191/87, and a heart rate of 63.[36] Defendant adds that, contrary to Plaintiff's assertions in the SAC, she did order an EKG at the visit and she did refer Plaintiff to a physician's assistant, as recorded in her notes from that visit.[37]

Defendant also contends that she provided Plaintiff with appropriate medical care when she treated him for chest pain on August 25, 2018.[38] She maintains that she "obtained Mr. Davis' medical history, took Mr. Davis['] vital signs, asked him a standard battery of questions to ascertain his current condition, obtained an ECG from Mr. Davis, and referred him for further care which he received the subsequent morning."[39] Defendant adds that Mr. Davis denied experiencing acute chest pain at the August 25, 2018 visit and said that his pain was comparable to what he had been experiencing in the prior two weeks.[40] Citing to a declaration from an expert witness—Dr. Lawrence, the Chief Medical Officer for the State of Alaska Department of Corrections[41]—Defendant contends that "it was appropriate . . . to release Mr. Davis and refer him to a DOC healthcare professional for further evaluation . . . given

---

[36] Docket 46 at 11–12.

[37] Docket 46 at 12.

[38] Docket 46 at 13.

[39] Docket 46 at 13.

[40] Docket 46 at 13.

[41] Docket 46-2 at 1, ¶ 5.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 9 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 9 of 20

that the ECG . . . produced similar results to ECG's [sic] previously obtained on August 21, 22, 23, and 24," and given that Mr. Davis reported his symptoms were unchanged and there was no evidence of an acute cardiac event.[42] Defendant adds that her treatment was confirmed as appropriate when tests conducted by ANP Ervin on August 28, 2018 determined that Plaintiff had not suffered a cardiac event in the preceding week.[43] Defendant concludes that "Mr. Davis's medical records alone are enough to show that [Defendant] provided Mr. Davis with appropriate medical treatment" and are "grounds for summary judgment."[44]

Defendant relies on *Toguchi v. Chung*, where the plaintiffs brought a § 1983 action against prison physicians after their son died in custody as a result of toxic effects of medications.[45] In *Toguchi*, the plaintiffs' medical experts agreed that the treating physician Dr. Chung had failed to evaluate the decedent's medical condition. One testified:

> Dr. Chung's failure to evaluate [the decedent's] actual condition, to conduct a differential diagnosis that would rule out disease or conditions other than 'ice flashbacks,' led her to disregard the known risks of harm from the medications she was administering to him in high doses . . . . Her failure to consider these risks directly and proximately precluded proper treatment of [the decedent] and . . . eliminated any chance of

---

[42] Docket 46 at 14.

[43] Docket 46 at 14–15.

[44] Docket 46 at 16 (citing *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004)).

[45] *Toguchi*, 391 F.3d at 1055.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 10 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 10 of 20

> determining the seriousness of his condition or taking appropriate measures that would have prevented his death.[46]

Plaintiffs' other expert added that: "these drugs . . . were prescribed 'without any assessment by Dr. Chung of [the decedent's] actual medical condition and without regard for possible withdrawal symptoms that would be affecting his heart rate or potential for arrhythmia."[47]

The district court granted summary judgment to Dr. Chung.[48] On review, the Ninth Circuit affirmed, emphasizing, among other things, that the plaintiffs' experts' opinion were "predicated upon his position that Dr. Chung administered the medications without assessing [the decedent's] actual medical condition . . . [and] this accusation is one of negligence as opposed to deliberate indifference."[49] The Circuit added, "[it] does not matter whether Dr. Chung's assumptions and conclusions were reasonable. Rather, so long as she was not subjectively aware of the risk that [the decedent] could be suffering from a drug overdose, and disregarded that risk, she was not deliberately indifferent."[50] Defendant contends that, like the defendants in *Toguchi*, she is entitled to summary judgment.[51]

---

[46] *Id.* at 1056 (quoting expert).

[47] *Id.* at 1056 (quoting expert).

[48] *Id.*

[49] *Id.* at 1059.

[50] *Id.* at 1060.

[51] Docket 46 at 16.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 11 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 11 of 20

In addition to Mr. Davis's medical records, Defendant provides medical testimony from Dr. Lawrence that she contends confirms that her treatment of Plaintiff was appropriate.[52] Dr. Lawrence declares that Defendant "acted in conformance with the standard of care in her treatment of Mr. Davis" when she "received Mr. Davis' complaints without bias, gathered the appropriate data, and made an appropriate referral to a DOC healthcare practitioner."[53] Dr. Lawrence adds that "[g]iven Mr. Davis' severe medical issues, including diabetes and underlying cardiovascular disease, [Defendant] acted appropriately by obtaining a medical history, vital signs, and an ECG of Mr. Davis despite his statement that his chest pain was unchanged from similar episodes of chest pain he was suffering during the same time period."[54] Dr. Lawrence declares that given that the ECG Defendant obtained was "similar to previous . . . ECG's obtained from Mr. Davis" and that "[g]iven the absence of signs or symptoms of an acute cardiac event, it was appropriate for [Defendant] to refer Mr. Davis to a DOC healthcare practitioner for further evaluation the following morning."[55] Dr. Lawrence explains that Mr. Davis's subsequent medical records—including tests ordered by ANP Ervin—confirm that Mr. Davis was not suffering a

---

[52] Docket 46 at 16.

[53] Docket 46-2 at 3, ¶ 9.

[54] Docket 46-2 at 3–4, ¶ 10.

[55] Docket 46-2 at 4, ¶¶ 11–12.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 12 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 12 of 20

cardiac event on the date that Defendant treated him.[56] Dr. Lawrence notes that, in any event, "paralysis below the waist . . . [is] extremely unlikely to result from the chest pain Mr. Davis complained of on August 25, 2018."[57] Thus, Defendant concludes that even if Mr. Davis were able to establish that there was a dispute of material fact, the dispute "would remain a 'mere difference of medical opinion,'" which is not enough to sustain his claim.[58]

In opposition to Defendant's motion for summary judgment, Plaintiff cites to *Sealock v. Colorado*, maintaining that it is the "exact same" as this case.[59] In *Sealock*, the then-incarcerated plaintiff woke up in the night, ill and sweating, and informed an officer that he had "crushing pain in his chest," trouble breathing, and that he had been vomiting.[60] The facts there, as alleged by the plaintiff, were that he made repeated entreaties for medical help, but that the prison staff insisted that he could not go to the infirmary until morning.[61] When the plaintiff finally saw a nurse at 6:00 a.m., and told her about his chest pain and trouble breathing, she diagnosed

---

[56] Docket 46-2 at 4, ¶ 13.

[57] Docket 46-2 at 4, ¶ 14. Dr. Lawrence explains that "[p]aralysis is usually caused by neurological disease or dysfunction, which is related to chest pain only in the setting of extremely rare vascular conditions . . . which Mr. Davis does not have." Docket 46-2 at 4, ¶ 14.

[58] Docket 46 at 16 (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1055 (9th Cir. 2004)).

[59] Docket 50 at 1 (citing 218 F.3d 1205 (10th Cir. 2000)).

[60] *Sealock*, 218 F.3d at 1207–08.

[61] *Id.* at 1208.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 13 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 13 of 20

him with the flu and informed him that he had to wait for the physician's assistant at 8:00 a.m.[62] It was unclear whether the nurse mentioned the plaintiff's chest pain when she updated the PA, and the PA ordered a shot of Phenergan and bed rest for the plaintiff.[63] The following day around noon, the plaintiff was back at the infirmary, still suffering from chest pain and struggling to breathe; a different PA administered an EKG, detected changes in the plaintiff's heart, gave him nitroglycerin, and sent him to the hospital, where they determined he had suffered a major heart attack.[64]

On appeal, the Ninth Circuit reversed the summary judgment that the district court had granted to one of the officers who delayed getting the plaintiff to the infirmary; the Circuit held that there was a triable issue as to whether defendant "knew of and disregarded the excessive risk to [the plaintiff's] health that could result from the delay," given that the plaintiff presented evidence that the defendant was told the plaintiff might be having a heart attack, saw him exhibiting symptoms of a heart attack, refused to drive him to the hospital, and warned the plaintiff not to die on his shift.[65] The Ninth Circuit also reversed summary judgment in favor of the first PA the plaintiff saw, holding that there was a disputed issue of fact about whether or not the PA knew that plaintiff was suffering chest pains when he gave him Phenergan

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.* at 1210–11.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 14 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 14 of 20

and sent him back to his cell.[66]  However, the Ninth Circuit upheld the district court's grant of summary judgment to the nurse as she, "[a]t worst, misdiagnosed [the plaintiff] and failed to pass on information" about his chest pains.[67]

Plaintiff also contends that Defendant withheld information during discovery that Defendant relied on in support of her motion for summary judgment.[68] Otherwise, Plaintiff maintains that he is ready for trial and that he has witnesses to call to prove his case.[69]

As a threshold issue, the Court is not persuaded by Defendant's argument that she is entitled to summary judgment on the basis that she did not treat Mr. Davis on September 18, 2018.  Mr. Davis's SAC alleges that Defendant treated him "[o]n or about" September 18, 2018, and indeed, Defendant has presented evidence that she did treat him a few weeks prior on August 25, 2018 for chest pains, as well as on September 8, 2018 for a fall.[70]  Mr. Davis has not presented any evidence of any

---

[66] *Id.* at 1212.

[67] *Id.* at 1211.

[68] Docket 48 at 1.  Defendant denies that she withheld any discovery, and maintains that she has responded to all of Mr. Davis's discovery requests.  Docket 51 at 3–4. Specifically, Defendant contends she disclosed all of Plaintiff's medical records from 2015 through 2019 and medication logs from September 2018.  Docket 51 at 3.  Defendant represents that all the medical records relied on in support of her summary judgment motion were produced to Plaintiff.  Docket 51 at 4.  She adds that she responded to Plaintiff's two interrogatories in October 2019.  Docket 51 at 3.

[69] Docket 50 at 2.

[70] Docket 24 at 3; Docket 46-1 at 15–22.  According to Dr. Lawrence, Nurse Diaz-Oatman also treated Mr. Davis on September 8, 2018, after he fell out of his wheelchair.  Docket

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 15 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 15 of 20

other date(s) on or about September 18, 2018 on which he received treatment from Defendant. Making all justifiable inferences in Plaintiff's favor based on the record for purposes of this motion, his allegations can be understood as arising from treatment by Defendant for chest pain on August 25, 2018.[71]

Thus, the question for the Court is whether Defendant has shown that, as a matter of law, she was not deliberately indifferent to Plaintiff's medical needs when she treated him on August 25, 2018, or whether there remain genuine issues of material fact to be determined at trial. The Court has reviewed the evidence provided by Defendant, including Mr. Davis's medical records and the medical testimony from Dr. Lawrence, as well as Plaintiff's evidence, which is limited to his sworn allegations in the SAC.[72] In light of the evidence in the record, there is no genuine dispute that the facts are as follows: on August 25, 2018, Mr. Davis was complaining of chest

---

46-2 at 3, ¶ 7. Defendant did not provide these records to the Court.

[71] Defendant has assumed that the visit referred to in the SAC is her August 25, 2018 visit with Mr. Davis. Docket 46 at 10. In his opposition, Mr. Davis does not dispute that he was referring to the August 25, 2018 visit nor does he propose an alternate date. *See generally* Docket 50.

[72] The Court provided Mr. Davis with a Notice Regarding Motion for Summary Judgment at Docket 49. The Notice informed Mr. Davis that to oppose summary judgment, he must provide evidence supporting his claims or defenses, and provided examples of the types of evidence he can use. Docket 49 at 3–4. However, Mr. Davis did not put forth any evidence in any form in opposition to Defendant's motion for summary judgment. *See generally* Docket 50.

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 16 of 20
Case 3:18-cv-00264-SLG Document 52 Filed 04/15/20 Page 16 of 20

pain when he was treated by Defendant.[73]  Defendant took Mr. Davis's vitals,[74] obtained an EKG,[75] and referred Mr. Davis to a provider.[76]  Defendant confirmed that Mr. Davis's pulse was regular, and noted that there was no appearance of acute distress.[77]  Although Plaintiff alleges that Defendant did not do an EKG or refer him to a PA, the medical records directly contradict these allegations.  Plaintiff does not dispute the accuracy of the medical records nor put forth any evidence to support his allegations.  In opposing summary judgment, a plaintiff may no longer rest on the allegations in his complaint but must "affirmatively demonstrate that there is a genuine issue of material fact for trial."[78]  The Court finds there is no genuine question as to whether Defendant provided Plaintiff with an EKG or a referral.

In light of the foregoing, Plaintiff's claim of deliberate indifference is tethered to his remaining allegations that Defendant failed to send Plaintiff to the emergency room and that this failure led to Plaintiff's paralysis or otherwise caused him harm

---

[73] Docket 46-1 at 15, 20.

[74] Docket 46-1 at 15.

[75] Docket 46-1 at 16.

[76] Docket 46-1 at 16, 22.

[77] Docket 46-1 at 15–16.

[78] *Whitman v. Nesic*, 368 F.3d 931, 933–34 (7th Cir. 2004) (dismissing plaintiff's argument that "since a district court found his complaint stated a claim under § 1983 at the preliminary stages of the litigation, his complaint must also survive summary judgment").

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 17 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 17 of 20

and suffering.[79] Even assuming for purposes of this motion that Plaintiff's medical need was serious,[80] the Court finds that the record is devoid of evidence that Defendant was deliberately indifferent to Plaintiff's medical needs, *i.e.* that she was aware of a risk of paralysis or other harm to Plaintiff and disregarded that risk when she did not send him to the hospital.[81] Plaintiff has not provided any such evidence;[82] indeed, the record shows that Defendant was aware of Plaintiff's chest pains, took an EKG, evaluated whether he was in acute distress, and referred him to a provider.[83] Defendant provided expert medical testimony that this was an appropriate course of action given Plaintiff's symptoms and cardiac history.[84] Thus, unlike the defendants in *Sealock*, Defendant did not fail to assess Plaintiff's chest pains nor did she disregard symptoms or complaints of a heart attack; indeed, Defendant provided

---

[79] Docket 24 at 3.

[80] Defendant provided evidence in the form of medical records confirming that Mr. Davis had not suffered a heart attack on the date that she treated him. Docket 46-1 at 14 and Docket 46-2 at 4, ¶ 13.

[81] *See Peralta v. Dillard*, 744 F.3d 1076, 1081–82 (9th Cir. 2014) (en banc); *see also Colwell v. Bannister,* 763 F.3d 1060, 1066–1067 (9th Cir. 2014).

[82] Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

[83] Docket 46-1 at 15–16, 22.

[84] Docket 46-2 at 3–4, ¶¶ 9–11 ("In my professional opinion, Nurse Diaz-Oatman acted in conformance with the standard of care in her treatment of Mr. Davis. . . . [She] received Mr. Davis' complaints without bias, gathered the appropriate data, and made an appropriate referral . . . . [She] acted appropriately by obtaining a medical history, vital signs, and an ECG . . . .").

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 18 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 18 of 20

evidence that Plaintiff was not, in fact, having a heart attack when she treated him. Moreover, Defendant provided medical testimony that Plaintiff's paralysis was "extremely unlikely to result from the chest pain" he was suffering from on August 25, 2018.[85] Plaintiff has not disputed any of Defendant's evidence and has not provided evidence of a risk he suffered on the day in question, or of Defendant's knowledge of or disregard for such risk. Based on the record before the Court, and with all justifiable inferences drawn in Plaintiff's favor, the Court finds that Defendant was not deliberately indifferent to Plaintiff's medical needs and that Defendant is entitled to judgment as a matter of law.

Finally, although Plaintiff contends that Defendant relied on withheld discovery to support her motion for summary judgment, Defendant has represented that she provided Plaintiff with the medical records relied on in support of this motion and filed with the Court her responses to Plaintiff's discovery requests. Plaintiff did not identify what evidence was withheld and therefore did not offer an explanation as to why he was unable to present facts essential to justify his opposition.[86]

---

[85] Docket 46-2 at 4, ¶ 14.

[86] Fed. R. Civ. P. 56(d)(2) provides that, where facts are unavailable to the nonmovant, the court can allow more time or discovery where the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 19 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 19 of 20

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment at Docket 45 is GRANTED and Plaintiff's Motion to Dismiss at Docket 48 is DENIED. All claims against Defendant are hereby dismissed with prejudice.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 15th day of April, 2020, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:18-cv-00264-SLG, *Davis v. Diaz*
Order re Motion for Summary Judgment
Page 20 of 20
Case 3:18-cv-00264-SLG   Document 52   Filed 04/15/20   Page 20 of 20